IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2007 MAR 12  A 10: 33

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

LACRESHA CALDWELL,               )
                                 )
        Plaintiff,               )
                                 )
v.                               )     Civil Action No.: 3:07 cv 218 - WKW
                                 )     **Removed from Circuit Court of**
OLD MUTUAL FINANCIAL             )     **Tallapoosa County**
NETWORK,                         )     **CV-2007-000003**
                                 )
        Defendant.               )

NOTICE OF REMOVAL

TO:    THE UNITED STATES DISTRICT COURT
       MIDDLE DISTRICT OF ALABAMA

Defendant OLD MUTUAL FINANCIAL NETWORK ("Old Mutual") gives notice pursuant to 28 U.S.C. §§ 1441 and 1446 that this cause is hereby removed from the Circuit Court of Tallapoosa County, Alabama, to the United States District Court for the Middle District of Alabama.  As grounds for this removal, Old Mutual shows as follows:

1.    An action was commenced against Old Mutual in the Circuit Court of Tallapoosa County, Alabama on January 4, 2007, styled "*Lacresha Caldwell, Plaintiff v. Old Mutual Financial Network, Defendant*," Civil Action No. CV-2007-00003.   A copy of the Plaintiff's Complaint and all of the process, pleadings and orders in this action is attached hereto as Exhibit "A."

2.    Plaintiff is a resident of Mobile County, Alabama and alleges in the Complaint that she is entitled to receive death benefits in the amount of $100,000.00 under a policy issued by Old Mutual, a Maryland corporation. *See* Policy, attached as Exhibit "B."

3.    This Court has diversity jurisdiction over this matter pursuant to the provisions of 28 U.S.C. § 1332, since the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

4.    A Summons was issued by the Circuit Court of Tallapoosa County, Alabama on January 5, 2007, thereafter service was attempted upon Old Mutual. However, service was not perfected, as the address to which the summons was sent is not Old Mutual's authorized agent to receive service of process. *See* Exhibit "C." Although a Summons and Complaint were never formally served on Old Mutual, on March 1, 2007, Old Mutual received a copy of the Complaint from Plaintiff's counsel.

5.    In accordance with the requirements of 28 U.S.C. § 1446(b), this notice is filed within thirty (30) days after the receipt of the Complaint or other documents by petitioner evidencing petitioner's right of removal.

6.    By reason of the foregoing, Defendant desires and is entitled to have this action removed from the Circuit Court of Tallapoosa County, Alabama to the United States District Court for the Middle District of Alabama.

7.    A true and correct copy of this notice is filed contemporaneously with the Circuit Court of Tallapoosa County, Alabama and served upon all adverse parties as required by law.

WHEREFORE, Defendant, Old Mutual Financial Network requests the removal of this action from the Circuit Court of Tallapoosa County, Alabama to the United States District Court for the Middle District of Alabama, and requests that this Court accepts jurisdiction of this action and places this action on the docket of this Court for further proceedings as though the action had been originally instituted in this Court.

Respectfully submitted,

_____

FORREST S. LATTA          (LAT008)
fsl@bowronlatta.com
LERONNE RIDDICK-SEALS (RID008)
lrs@bowronlatta.com
Attorneys for Defendant
Old Mutual Financial Network

OF COUNSEL:

BOWRON, LATTA & WASDEN, P.C.
Post Office Box 16046
Mobile, AL  36616
Telephone:     (251) 344-5151
Facsimile:     (251) 344-9696

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 9th day of March 2007, served a copy of the foregoing upon the following counsel by placing same in the United States mail, properly addressed and first class postage prepaid:

_____

COUNSEL OF RECORD:

Tom Radney, Esquire
Radney & Radney
Post Office Box 819
Alexander City, AL  35011-0819

3

# EXHIBIT
# A

| State of Alabama  Judicial System  Form ARCIvP-93  Rev. 5/99 | **COVER SHEET**  **CIRCUIT COURT - CIVIL CASE**  (Not For Domestic Relations Cases) | Case Number  CV 2006 ☐☐☐☐  Date of Filing:  Month  Day  Year  Judge Code: |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____Tallapoosa County_____, ALABAMA
(Name of County)

_Lacresha Caldwell_ v. _Old Mutual Financial Network_
Plaintiff                          Defendant

First Plaintiff  ☐ Business  ☑ Individual        First Defendant  ☑ Business  ☐ Individual
☐ Government  ☐ Other                            ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☑ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other:

**TORTS: PROPERTY INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

*[stamp: RECEIVED JAN ... FRANK LUCAS CIRCUIT CLERK]*

**ORIGIN** (check one):  F ☑ INITIAL FILING        A ☐ APPEAL FROM DISTRICT COURT        O ☐ OTHER: _____

R ☐ REMANDED        T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES  ☐ NO     Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

ATTORNEY CODE: R A D 0 0 2    1/4/2007
Date                                    Signature of Attorney/Party filing this form.

**MEDIATION REQUESTED:** ☐ YES  ☐ NO  ☐ UNDECIDED

# IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
## AT ALEXANDER CITY

LACRESHA CALDWELL, )
)
    **Plaintiff,** )
)
v. )    CV-06-_____
)
OLD MUTUAL FINANCIAL )
NETWORK, a foreign corporation, )
)
**Defendants.** )

## SUMMONS

**SERVE:**    **Old Mutual Financial Network**
**c/o Fidelity & Guaranty Life Insurance Company**
**Post Office Box 81497**
**Lincoln, NE 68501-1497**

**THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE WRITTEN REQUEST OF PLAINTIFF'S ATTORNEY PURSUANT TO THE ALABAMA RULES OF CIVIL PROCEDURE.**

    Said Defendant is required to serve a copy of a written answer to the Complaint upon Tom Radney, of the firm Radney & Radney, LLC, Post Office Box 819, Alexander City, Alabama 35011, Attorney for the Plaintiff, within thirty (30) days from the date of service of this Summons, excluding the day of service of the Summons, and to file the original of said written answer with the Clerk of this Court at the time of service of the answer upon the Attorney of Record for the Plaintiff, or within a reasonable time thereafter. If any Defendant fails to do so, a judgment by default may be entered against him for the relief complained of in the Complaint.

DATED: _____

_____
CLERK OF THE COURT

## IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
## AT ALEXANDER CITY

LACRESHA CALDWELL,     )
                            )
     Plaintiff,        )
                            )
v.                     )     CV-06-____
                            )
OLD MUTUAL FINANCIAL     )
NETWORK, a foreign corporation,     )
                            )
     Defendants.      )

RECEIVED
JAN 2007
FRANK LUCAS
CIRCUIT CLERK

### COMPLAINT

1.     Plaintiff, Lacresha Caldwell, is a bona fide resident citizen of Mobile, Alabama and is over the age of nineteen (19) years.

2.     Defendant, Old Mutual Financial Network, is a foreign corporation doing business in Tallapoosa County, Alabama.

3.     On or about the 3rd day of October 2005, Old Mutual Financial Network issued to the Plaintiff a life insurance policy and delivered to Plaintiff said policy, a copy of which is attached hereto as Exhibit "A" and made a part of this Complaint.

4.     The Defendant insured the life of Plaintiff's husband, Adrian T. Caldwell, under Fidelity & Guaranty Life Insurance Company, policy number L0521924.

5.     The insured, Adrian T. Caldwell, died on or about April 1, 2006.

6.     Plaintiff made a claim against the Defendant under this policy and the Defendants have refused to pay.

WHEREFORE, Plaintiff request damages due under this policy in the stated amount of One Hundred Thousand Dollars ($100,000.00), together with interest, attorney's fees and the cost of this action.

Respectfully submitted on this the 4th day of January 2007.

Tom Radney (RAD002)
Attorney for *Plaintiff*
RADNEY & RADNEY, LLC
Post Office Box 819
Alexander City, Alabama 35011
(256) 234-2547 (telephone)
(256) 234-7871 (facsimile)

## *PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY*

OF COUNSEL.

# EXHIBIT B

# STATEMENT OF POLICY COST AND BENEFIT INFORMATION

DATE PREPARED:    OCT 03, 2006

AGENT:    ROBERT G. COOPER
144 BRENTWOOD DRIVE
DAPHNE, AL 36526

COMPANY:    FIDELITY AND GUARANTY LIFE INSURANCE COMPANY
P.O. BOX 1137
BALTIMORE, MARYLAND 21203-1137

INSURED:    ADRIAN T CALDWELL          ISSUE AGE:    33

POLICY:    LEVEL TERM LIFE INSURANCE

PREMIUM CLASS:    NON-TOBACCO
FACE AMOUNT:    $99,900
INITIAL TERM PERIOD:    30 YEARS

PREMIUM GUARANTEE PERIOD:    30 YEARS FROM POLICY DATE

RIDERS:    RETURN OF PREMIUM RIDER
CHILDREN'S LEVEL TERM LIFE INSURANCE RIDER

UNEMPLOYMENT RIDER
OTHER INSURED'S RENEWABLE TERM RIDER †
† PREMIUMS FOR THIS RIDER ARE NOT INCLUDED BELOW
(SEE OTHER INSURED PAGE)

## ANNUAL PREMIUMS FOR POLICY AND ANY RIDERS;

| POLICY YEAR | CURRENT LEVEL TERM LIFE INSURANCE*** | CURRENT TOTAL PREMIUM*** | RETURN OF PREMIUM | CHILDREN'S LEVEL TERM LIFE INSURANCE | DISABILITY INCOME RIDER | GUARANTEED MAXIMUM TOTAL PREMIUM*** |
|---|---|---|---|---|---|---|
| 1 | $293.77* | $453.45* | $127.18 | $32.50 | | $453.45 |
| 2 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| 3 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| 4 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| 5 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| 6 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| 10 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| 20 | 293.77* | 453.45* | 127.18 | 32.50 | | 453.45 |
| Age 85 | 6,010.05 | 6,010.05 | 0.00 | 0.00 | | 6,010.05 |

* THESE PREMIUMS ARE PAID DURING THE PREMIUM GUARANTEE PERIOD AND WILL NOT CHANGE. WE RESERVE THE RIGHT TO CHANGE THE CURRENT LIFE INSURANCE PREMIUM FOR EACH POLICY YEAR AFTER THE PREMIUM GUARANTEE PERIOD. IT MAY BE HIGHER OR LOWER THAN THAT SHOWN, BUT THE CURRENT TOTAL PREMIUM WILL NEVER EXCEED THE GUARANTEED MAXIMUM TOTAL PREMIUM.

*** $60.00 POLICY FEE INCLUDED.

L0521924 MLT-U

COST COMPARISON INDEXES*:

| SURRENDER COST INDEX | CURRENT BASIS | GUARANTEED BASIS | NET PAYMENT INDEX | CURRENT BASIS | GUARANTEED BASIS |
|---|---|---|---|---|---|
| YEAR 10 | 3.97 | 3.97 | YEAR 10 | 4.21 | 4.21 |
| YEAR 20 | 3.29 | 3.29 | YEAR 20 | 4.21 | 4.21 |

*AN EXPLANATION OF THE INTENDED USE OF THESE INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYER'S GUIDE.

GUARANTEED AMOUNT PAYABLE UPON DEATH, EXCEPT BY SUICIDE:

| BEGINNING OF POLICY YEAR | LEVEL TERM LIFE INSURANCE |
|---|---|
| 1 | $99,900 |
| 2 | 99,900 |
| 3 | 99,900 |
| 4 | 99,900 |
| 5 | 99,900 |
| 10 | 99,900 |
| 20 | 99,900 |
| AGE 65 | 99,900 |

CASH VALUES FOR POLICY (WHEN RETURN OF PREMIUM RIDER IS ATTACHED):

| END OF POLICY YEAR | |
|---|---|
| 1 | 0.00 |
| 2 | 0.00 |
| 3 | 0.00 |
| 4 | 0.00 |
| 5 | 0.00 |
| 10 | 317.63 |
| 20 | 9,176.35 |
| AGE 65 | 0.00 |

THE PROSPECT SHOULD DISREGARD ANY ORAL REPRESENTATIONS MADE BY THE AGENT UNLESS THOSE STATEMENTS ARE DISCLOSED IN WRITING ON A FORM SIGNED BY THE AGENT AND A COPY OF THAT FORM IS LEFT WITH THE PROSPECT.

DISCLAIMER NOTICE REGARDING TAX LAW: The information in this "Statement of Policy Cost and Benefit Information" is not intended to be used in tax planning nor is it intended for the purpose of providing tax advice. The possibility of future changes in tax laws must be recognized and taken into consideration. The tax status of this policy as it applies to the Owner should be reviewed by the Owner's professional tax advisor.

THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSIDERED AS AN OFFER TO CONTRACT OR AS ALTERING OR MODIFYING A POLICY THAT MIGHT BE ISSUED.

L0521924 MLT-U

# STATEMENT OF POLICY COST AND BENEFIT INFORMATION -
## OTHER INSURED RIDER

DATE PREPARED:    OCT 03, 2005

AGENT:    ROBERT G. COOPER
144 BRENTWOOD DRIVE
DAPHNE, AL 36526

COMPANY:    FIDELITY AND GUARANTY LIFE INSURANCE COMPANY
P.O. BOX 1137
BALTIMORE, MARYLAND 21203-1137

OTHER INSURED: LACRESHA N CALDWELL                    AGE: 26            SEX: FEMALE

RIDER: OTHER INSURED'S LEVEL TERM RIDER

PREMIUM CLASS: NON-TOBACCO
INITIAL FACE AMOUNT: $99,900
INITIAL TERM PERIOD: 30 YEARS

PREMIUM GUARANTEE PERIOD: 30 YEARS FROM POLICY DATE

RIDERS: NONE

ANNUAL PREMIUMS:

| POLICY YEAR | OTHER INSURED CURRENT PREMIUM | OTHER INSURED GUARANTEED MAXIMUM PREMIUM |
|---|---|---|
| 1 | $181.82* | $181.82 |
| 2 | $181.82* | $181.82 |
| 3 | $181.82* | $181.82 |
| 4 | $181.82* | $181.82 |
| 5 | $181.82* | $181.82 |
| 6 | $181.82* | $181.82 |
| 10 | $181.82* | $181.82 |
| 20 | $181.82* | $181.82 |
| AGE 65 | $5,950.05 | $5,950.05 |

* THESE PREMIUMS ARE PAYABLE DURING THE PREMIUM GUARANTEE PERIOD AND WILL NOT CHANGE. WE RESERVE THE RIGHT TO CHANGE THE OTHER INSURED CURRENT PREMIUM FOR EACH POLICY YEAR AFTER THE PREMIUM GUARANTEE PERIOD. IT MAY BE MORE OR LESS THAN THAT SHOWN, BUT IT WILL NEVER BE MORE THAN THE OTHER INSURED GUARANTEED MAXIMUM PREMIUM.

L0521924   MLT-U

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION -
## OTHER INSURED RIDER

OTHER INSURED: LACRESHA N CALDWELL

COST COMPARISON INDEXES*:

| SURRENDER COST INDEX | CURRENT BASIS | GUARANTEED BASIS | NET PAYMENT INDEX | CURRENT BASIS | GUARANTEED BASIS |
|---|---|---|---|---|---|
| YEAR 10 | 1.82 | 1.82 | YEAR 10 | 1.82 | 1.82 |
| YEAR 20 | 1.82 | 1.82 | YEAR 20 | 1.82 | 1.82 |

*AN EXPLANATION OF THE INTENDED USE OF THESE INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYER'S GUIDE.

GUARANTEED AMOUNT PAYABLE UPON DEATH, EXCEPT BY SUICIDE:

| BEGINNING OF POLICY YEAR | LEVEL TERM LIFE INSURANCE |
|---|---|
| 1 | $99,900 |
| 2 | $99,900 |
| 3 | $99,900 |
| 4 | $99,900 |
| 5 | $99,900 |
| 10 | $99,900 |
| 20 | $99,900 |
| AGE 65 | $99,900 |

THE PROSPECT SHOULD DISREGARD ANY ORAL REPRESENTATIONS MADE BY THE AGENT UNLESS THOSE STATEMENTS ARE DISCLOSED IN WRITING ON A FORM SIGNED BY THE AGENT AND A COPY OF THAT FORM IS LEFT WITH THE PROSPECT.

DISCLAIMER NOTICE REGARDING TAX LAW:     The information in this "Statement of Policy Cost and Benefit Information" is not intended to be used in tax planning nor is it intended for the purpose of providing tax advice. The possibility of future changes in tax laws must be recognized and taken into consideration. The tax status of this policy as it applies to the Owner should be reviewed by the Owner's professional tax advisor.

THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSIDERED AS AN OFFER TO CONTRACT OR AS ALTERING OR MODIFYING A POLICY THAT MIGHT BE ISSUED.

L0521924   MLT-U

### Life Insurance Buyer's Guide

This guide can help you when you shop for life insurance. It discusses how to:

- Find a Policy That Meets Your Needs and Fits Your Budget
- Decide How Much Insurance You Need
- Make Informed Decisions When You Buy a Policy

*Prepared by the National Association of Insurance Commissioners*

The National Association of Insurance Commissioners is an association of state insurance regulatory officials. This association helps the various insurance departments to coordinate insurance laws for the benefit of all consumers.

This guide does not endorse any company or policy.

Reprinted by...

**Fidelity and Guaranty Life Insurance Company**
**Americom Life and Annuity Insurance Company**
**Fidelity and Guaranty Life of New York**

---

### IMPORTANT THINGS TO CONSIDER

1. Review your own insurance needs and circumstances. Choose the kind of policy that has benefits that most closely fit your needs. Ask an agent or company to help you.

2. Be sure that you can handle premium payments. Can you afford the initial premium? If the premium increases later and you still need insurance, can you still afford it?

3. Don't sign an insurance application until you review it carefully to be sure all the answers are complete and accurate.

4. Don't buy life insurance unless you intend to stick with your plan. It may be very costly if you quit during the early years of the policy.

5. Don't drop one policy and buy another without a thorough study of the new policy and the one you have now. Replacing your insurance may be costly.

6. Read your policy carefully. Ask your agent or company about anything that is not clear to you.

7. Review your life insurance program with your agent or company every few years to keep up with changes in your income and your needs.

---

## Buying Life Insurance

When you buy life insurance, you want coverage that fits your needs.

First, decide how much you need - and for how long - and what you can afford to pay. Keep in mind the major reason you buy life insurance is to cover the financial effects of unexpected or untimely death. Life insurance can also be one of many ways you plan for the future.

Next, learn what kinds of policies will meet your needs and pick the one that best suits you.

Then, choose the combination of policy premium and benefits that emphasizes protection in case of early death, or benefits in case of long life, or a combination of both.

It makes good sense to ask a life insurance agent or company to help you. An agent can help you review your insurance needs and give you information about the available policies. If one kind of policy doesn't seem to fit your needs, ask about others.

This guide provides only basic information. You can get more facts from a life insurance agent or company or from your public library.

### What About the Policy You Have Now?

If you are thinking about dropping a life insurance policy, here are some things you should consider:

- If you decide to replace your policy, don't cancel your old policy until you have received the new one. You then have a minimum period to review your new policy and decide if it is what you wanted.

- It may be costly to replace a policy. Much of what you paid in the early years of the policy you have now, paid for the company's cost of selling and issuing the policy. You may pay this type of cost again if you buy a new policy.

- Ask your tax advisor if dropping your policy could affect your income taxes.

- If you are older or your health has changed, premiums for the new policy will often be higher. You will not be able to buy a new policy if you are not insurable.

- You may have valuable rights and benefits in the policy you now have that are not in the new one.

- If the policy you have now no longer meets your needs, you may not have to replace it. You might be able to change your policy or add to it to get the coverage or benefits you now want.

- At least in the beginning, a policy may pay no benefits for some causes of death covered in the policy you have now.

In all cases, if you are thinking of buying a new policy, check with the agent or company that issued you the one you have now. When you bought your old policy, you may have seen an illustration of the benefits of your policy. Before replacing your policy, ask your agent or company for an updated illustration. Check to see how the policy has performed and what you might expect in the future, based on the amounts the company is paying now.

## How Much Do You Need?

Here are some questions to ask yourself:

- How much of the family income do I provide? If I were to die early, how would my survivors, especially my children, get by? Does anyone else depend on me financially, such as a parent, grandparent, brother or sister?

- Do I have children for whom I'd like to set aside money to finish their education in the event of my death?

- How will my family pay final expenses and repay debts after my death?

- Do I have family members or organizations to whom I would like to leave money?

- Will there be estate taxes to pay after my death?

- How will inflation affect future needs?

As you figure out what you have to meet these needs, count the life insurance you have now, including any group insurance where you work or veteran's insurance. Don't forget Social Security and pension plan survivor's benefits. Add other assets you have: savings, investments, real estate and personal property. Which assets would your family sell or cash in to pay expenses after your death?

## What Is the Right Kind of Life Insurance?

All policies are not the same. Some give coverage for your lifetime and others cover you for a specific number of years. Some build up cash values and others do not. Some policies combine different kinds of insurance, and others let you change from one kind of insurance to another. Some policies may offer other benefits while you are still living. Your choice should be based on your needs and what you can afford.

There are two basic types of life insurance: term insurance and cash value insurance. Term insurance generally has lower premiums in the early years, but does not build up cash values that you can use in the future. You may combine cash value life insurance with term insurance for the period of your greatest need for life insurance to replace income.

**Term Insurance** covers you for a term of one or more years. It pays a death benefit only if you die in that term. Term insurance generally offers the largest insurance protection for your premium dollar. It generally does not build up cash value.

You can renew most term insurance policies for one or more terms even if your health has changed. Each time you renew the policy for a new term, premiums may be higher. Ask what the premiums will be if you continue to renew the policy. Also ask if you will lose the right to renew the policy at some age. For a higher premium, some companies will give you the right to keep the policy in force for a guaranteed period at the same price each year. At the end of that time you may need to pass a physical examination to continue coverage, and premiums may increase.

You may be able to trade many term insurance policies for a cash value policy during a conversion period - even if you are not in good health. Premiums for the new policy will be higher than you have been paying for the term insurance.

**Cash Value Life Insurance** is a type of insurance where the premiums charged are higher at the beginning than they would be for the same amount of term insurance. The part of the premium that is not used for the cost of insurance is invested by the company and builds up a cash value that may be used in a variety of ways. You may borrow against a policy's cash value by taking a policy loan. If you don't pay back the loan and the interest on it, the amount you owe will be subtracted from the benefits when you die, or from the cash value if you stop paying premiums and take out the remaining cash value. You can also use your cash value to keep insurance protection for a limited time or to buy a reduced amount without having to pay more premiums. You also can use the cash value to increase your income in retirement or to help pay for needs such as a child's tuition without canceling the policy. However, to build up this cash value, you must pay higher premiums in the earlier years of the policy. Cash value life insurance may be one of several types; whole life, universal life and variable life are all types of cash value insurance.

*Whole Life Insurance* covers you for as long as you live if your premiums are paid. You generally pay the same amount in premiums for as long as you live. When you first take out the policy, premiums can be several times higher than you would pay initially for the same amount of term insurance. But they are smaller than the premiums you would eventually pay if you were to keep renewing a term policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years, or until age 65. Premiums for these policies are higher since the premium payments are made during a shorter period.

*Universal Life Insurance* is a kind of flexible policy that lets you vary your premium payments. You can also adjust the face amount of your coverage. Increases may require proof that you qualify for the new death benefit. The premiums you pay (less expense charges) go into a policy account that earns interest. Charges are deducted from the account. If your yearly premium plus the interest your account earns is less than the charges, your account value will become lower. If it keeps dropping, eventually your coverage will end. To prevent that, you may need to start making premium payments, or increase your premium payments, or lower your death benefits. Even if there is enough in your account to pay the premiums, continuing to pay premiums yourself means that you build up more cash value.

*Variable Life Insurance* is a kind of insurance where the death benefits and cash values depend on the investment performance of one or more separate accounts, which may be invested in mutual funds or other investments allowed under the policy. Be sure to get the prospectus from the company when buying this kind of policy and STUDY IT CAREFULLY. You will have higher death benefits and cash value if the underlying investments do well. Your benefits and cash value will be lower or may disappear if the investments you chose didn't do as well as you expected. You may pay an extra premium for a guaranteed death benefit.

## Life Insurance Illustrations

You may be thinking of buying a policy where cash values, death benefits, dividends or premiums may vary based on events or situations the company does not guarantee (such as interest rates). If so, you may get an illustration from the agent or company that helps explain how the policy works. The illustration will show how the benefits that are not guaranteed will change as interest rates and other factors change. The illustration will show you what the company guarantees. It will also show you what *could* happen in the future. Remember that nobody knows what will happen in the future. You should be ready to adjust

your financial plans if the cash value doesn't increase as quickly as shown in the illustration. You will be asked to sign a statement that says you understand that some of the numbers in the illustration are not guaranteed.

### Finding a Good Value in Life Insurance

After you have decided which kind of life insurance is best for you, compare similar policies from different companies to find which one is likely to give you the best value for your money. A simple comparison of the premiums is not enough. There are other things to consider. For example:

* Do premiums or benefits vary from year to year?

* How much do the benefits build up in the policy?

* What part of the premiums or benefits is not guaranteed?

* What is the effect of interest on money paid and received at different times on the policy?

Once you have decided which type of policy to buy, you can use a cost comparison index to help you compare similar policies. Life insurance agents or companies can give you information about several different kinds of indexes that each work a little differently. One type helps you compare the costs between two policies if you give up the policy and take out the cash value. Another helps you compare your costs if you don't give up your policy before its coverage ends. Some help you decide what kind of questions to ask the agent about the numbers used in an illustration. Each index is useful in some ways, but they all have shortcomings. Ask your agent which will be most helpful to you. Regardless of which index you use, compare index numbers only for similar policies - those that offer basically the same benefits, with premiums payable for the same length of time.

Remember that no one company offers the lowest cost at all ages for all kinds and amounts of insurance. You should also consider other factors:

* How quickly does the cash value grow? Some policies have low cash values in the early years that build quickly later on. Other policies have a more level cash value build-up. A year-by-year display of values and benefits can be very helpful. (The agent or company will give you a policy summary or an illustration that will show benefits and premiums for selected years.)

* Are there special policy features that particularly suit your needs?

* How are nonguaranteed values calculated? For example, interest rates are important in determining policy returns. In some companies increases reflect the average interest earnings on all of that company's policies regardless of when issued. In others, the return for policies issued in a recent year, or a group of years, reflects the interest earnings on that group of policies; in this case, amounts paid are likely to change more rapidly when interest rates change.

### FIDELITY AND GUARANTY LIFE INSURANCE COMPANY

### A STOCK COMPANY

**Home Office: Baltimore, Maryland**

This policy is issued in consideration of the application and payment of premiums.

While this policy is in effect, we will pay the death benefit if the insured dies before the Expiration Date of any term. Any payment will be made subject to this policy's provisions.

This life insurance policy is a legal contract between the policy Owner and the Company. READ YOUR POLICY CAREFULLY. Its terms are contained on this page and those which follow.

Signed for the Company.

*[signature]*

President

*(if applicable)*

**AGENT NAME AND ADDRESS:**
ROBERT G. COOPER
144 BRENTWOOD DRIVE
DAPHNE, AL 36526

Countersigned at:
City:_____ State:_____ Date:_____
By Agent:_____

**RIGHT TO CANCEL.** If you decide not to keep this policy, return it within 20 days after you receive it. It may be returned to any of our agents or it may be mailed to us. The return of this policy will void it from the beginning. Any premium paid will be refunded. We will make any refund within 10 days of our receipt of this policy.

### LEVEL TERM LIFE INSURANCE POLICY

<u>NOTICE TO OWNER:</u> If you have questions or need information about this policy or need assistance in resolving a complaint, please call us at 1-888-513-8797.

Premiums are payable in advance while the insured is alive and until the Expiration Date of each term. After the Premium Guarantee Period, each renewal premium will not be more than the Guaranteed Maximum Total Premium shown in the TABLE OF ANNUAL RENEWAL PREMIUMS. Renewable to age 95. Convertible through the date shown under POLICY DATA in the POLICY INFORMATION section. Death benefit is payable if insured dies before the Expiration Date and while this policy is in effect. Nonparticipating: dividends are not payable.

Copyright © 1998 by Fidelity and Guaranty Life Insurance Company. All rights reserved.

# INDEX

**Page**

BENEFICIARY.................................................. 8
    Change of Beneficiary(ies)................................. 8
    Irrevocable Beneficiary(ies)............................... 8
    Payment to Beneficiary(ies)............................... 8

CONVERSION.................................................. 11
    New Policy.................................................. 11
    Suicide and Incontestability............................... 11

DEATH BENEFIT.............................................. 12
    Interest Paid on Death Benefit............................ 12
    Payment of Death Benefit................................. 12
    Suicide Exclusion.......................................... 12

DEFINITIONS.................................................. 5

GENERAL PROVISIONS..................................... 6-7
    Arbitration.................................................. 7
    Assignment................................................. 6
    Claims of Creditors........................................ 7
    Effective Date.............................................. 7
    Entire Contract............................................ 6
    Incontestability............................................ 6
    Misstatement of Birth Date................................ 6
    Nonparticipating........................................... 7
    Policy Changes............................................. 7
    Representations........................................... 6
    Termination of Policy...................................... 7

METHODS OF SETTLEMENT................................ 13-15
    Amount of Payment....................................... 14
    Election of Option......................................... 13
    Interest Paid on Proceeds................................ 13
    Options.................................................... 14
    Payee...................................................... 13
    Payment................................................... 13
    Payment of Proceeds..................................... 13
    Table of Guaranteed Monthly Payments................. 15

**Page**

OWNERSHIP................................................... 8
    Change of Owner and Contingent Owner................. 8
    Ownership Rights.......................................... 8
    Ownership Succession.................................... 8

POLICY INFORMATION..................................... 3-4
    Policy Data................................................. 3
    Policy, Premium, and Rider Information.................. 3
    Table of Annual Renewal Premiums...................... 4

PREMIUMS.................................................... 9
    Adjustment of Renewal Premiums........................ 9
    Grace Period............................................... 9
    Premium Payments........................................ 9
    Renewal.................................................... 9

REINSTATEMENT............................................. 10
    Effective Date of Reinstatement.......................... 10
    Reinstatement Requirements............................. 10

Any endorsements, restrictions, riders, or additional benefits follow Page 15.

FGL MLT-U (9-98)

# POLICY INFORMATION

## POLICY DATA

| | | |
|---|---|---|
| INSURED<br>ADRIAN T CALDWELL | DATE OF ISSUE<br>OCTOBER 3, 2005 | EXPIRATION DATE<br>OCTOBER 3, 2035 |
| POLICY NUMBER<br>L0521924 | POLICY DATE<br>OCTOBER 3, 2005 | POLICY CONVERTIBLE THROUGH<br>OCTOBER 3, 2035 |
| PREMIUM CLASS<br>NON-TOBACCO | AGE AT ISSUE<br>33 | PREMIUM GUARANTEE PERIOD<br>30 YEARS FROM POLICY DATE |
| OWNER<br>ADRIAN T CALDWELL | FACE AMOUNT<br>$99,900 | |

*(OWNER INFORMATION IS SUBJECT TO ANY CHANGE SUBMITTED AND ON RECORD.)*

## POLICY, PREMIUM, AND RIDER INFORMATION

| | FIRST<br>ANNUAL*<br>PREMIUM | COVERAGE CANNOT<br>BE CONTINUED<br>AFTER |
|---|---|---|
| LEVEL TERM LIFE INSURANCE<br>  INITIAL TERM - 30 YEARS<br>  NON-TOBACCO PREMIUM | $233.77 | OCTOBER 3, 2067 |
| UNEMPLOYMENT RIDER | $ 0.00 | OCTOBER 3, 2037 |
| RETURN OF PREMIUM RIDER<br>  NON-TOBACCO PREMIUM | $127.18 | OCTOBER 3, 2035 |
| ACCIDENTAL DEATH BENEFIT RIDER<br>  EFFECTIVE - OCTOBER 3, 2005<br>  AMOUNT - $49,950<br>  NON-TOBACCO PREMIUM | $0.00 | OCTOBER 3, 2042 |
| CHILDREN'S LEVEL TERM LIFE INSURANCE RIDER<br>  EFFECTIVE - OCTOBER 3, 2005<br>  AMOUNT - $5,000 PER CHILD | $32.50 | OCTOBER 3, 2028 |
| OTHER INSURED LIFE RIDER<br>  EFFECTIVE - OCTOBER 3, 2005<br>  OTHER INSURED - LACRESHA N CALDWELL<br>  INITIAL TERM - 30 YEARS<br>  AMOUNT - $99,900<br>  PREMIUM GUARANTEE PERIOD - 30 YEARS<br>  NON-TOBACCO PREMIUM | $181.82 | OCTOBER 3, 2067 |

FGL MLT-U (9-98)

# POLICY INFORMATION *(Cont'd)*

## POLICY, PREMIUM, AND RIDER INFORMATION *(Cont'd)*

| | FIRST ANNUAL* PREMIUM | COVERAGE CANNOT BE CONTINUED AFTER |
|---|---|---|
| ANNUAL POLICY FEE: | $60.00 | |
| TOTAL FIRST ANNUAL PREMIUM: | $635.27 | |

*FOR OTHER PREMIUM PAYMENT INTERVALS, MULTIPLY THE FIRST ANNUAL PREMIUM BY:
- .51 FOR SEMI-ANNUAL;
- .26 FOR QUARTERLY;
- .09 FOR MONTHLY;
- .041 FOR BI-WEEKLY.

RENEWAL PREMIUMS ARE SHOWN IN THE TABLE OF ANNUAL RENEWAL PREMIUMS WHICH FOLLOWS.

FGL MLT-U (9-98)

# POLICY INFORMATION (Cont'd)

## TABLE OF ANNUAL RENEWAL PREMIUMS

POLICY NUMBER: L0521924

| POLICY YEAR BEGINNING OCT 03 | CURRENT LEVEL TERM LIFE INSURANCE | CURRENT TOTAL PREMIUM** | GUARANTEED MAXIMUM TOTAL PREMIUM** | POLICY YEAR BEGINNING OCT 03 | CURRENT LEVEL TERM LIFE INSURANCE | CURRENT TOTAL PREMIUM** | GUARANTEED MAXIMUM TOTAL PREMIUM** |
|---|---|---|---|---|---|---|---|
| 2006 | $293.77* | $635.27* | $635.27 | 2046 | $14,920.13 | $22,157.89 | $22,157.89 |
| 2007 | 293.77* | 635.27* | 635.27 | 2047 | 16,597.45 | 24,549.49 | 24,549.49 |
| 2008 | 293.77* | 635.27* | 635.27 | 2048 | 18,378.67 | 27,122.92 | 27,122.92 |
| 2009 | 293.77* | 635.27* | 635.27 | 2049 | 20,252.79 | 29,899.14 | 29,899.14 |
| 2010 | 293.77* | 635.27* | 635.27 | 2050 | 22,233.81 | 32,923.11 | 32,923.11 |
| 2011 | 293.77* | 635.27* | 635.27 | 2051 | 24,385.65 | 36,295.73 | 36,295.73 |
| 2012 | 293.77* | 635.27* | 635.27 | 2052 | 26,701.26 | 40,088.94 | 40,088.94 |
| 2013 | 293.77* | 635.27* | 635.27 | 2053 | 29,483.55 | 44,343.68 | 44,343.68 |
| 2014 | 293.77* | 635.27* | 635.27 | 2054 | 32,551.46 | 49,088.93 | 49,088.93 |
| 2015 | 293.77* | 635.27* | 635.27 | 2055 | 35,968.06 | 54,286.73 | 54,286.73 |
| 2016 | 293.77* | 635.27* | 635.27 | 2056 | 39,676.35 | 59,869.14 | 59,869.14 |
| 2017 | 293.77* | 635.27* | 635.27 | 2057 | 43,803.42 | 65,777.23 | 65,777.23 |
| 2018 | 293.77* | 635.27* | 635.27 | 2058 | 47,704.31 | 72,029.96 | 72,029.96 |
| 2019 | 293.77* | 635.27* | 635.27 | 2059 | 51,935.08 | 78,656.34 | 78,656.34 |
| 2020 | 293.77* | 635.27* | 635.27 | 2060 | 56,282.73 | 85,706.28 | 85,706.28 |
| 2021 | 293.77* | 635.27* | 635.27 | 2061 | 60,799.20 | 93,290.68 | 93,290.68 |
| 2022 | 293.77* | 635.27* | 635.27 | 2062 | 65,542.46 | 101,450.52 | 101,450.52 |
| 2023 | 293.77* | 635.27* | 635.27 | 2063 | 70,820.37 | 110,236.72 | 110,236.72 |
| 2024 | 293.77* | 635.27* | 635.27 | 2064 | 76,223.76 | 119,767.19 | 119,767.19 |
| 2025 | 293.77* | 635.27* | 635.27 | 2065 | 82,846.14 | 130,490.45 | 130,490.45 |
| 2026 | 293.77* | 635.27* | 635.27 | 2066 | 91,603.37 | 143,478.45 | 143,478.45 |
| 2027 | 293.77* | 635.27* | 635.27 | | | | |
| 2028 | 293.77* | 593.47* | 593.47 | | | | |
| 2029 | 293.77* | 593.47* | 593.47 | | | | |
| 2030 | 293.77* | 593.47* | 593.47 | | | | |
| 2031 | 293.77* | 593.47* | 593.47 | | | | |
| 2032 | 293.77* | 593.47* | 593.47 | | | | |
| 2033 | 293.77* | 593.47* | 593.47 | | | | |
| 2034 | 293.77* | 593.47* | 593.47 | | | | |
| 2035 | 4,893.17 | 7,406.66 | 7,406.66 | | | | |
| 2036 | 5,427.63 | 8,168.89 | 8,168.89 | | | | |
| 2037 | 6,010.05 | 8,999.06 | 8,999.06 | | | | |
| 2038 | 6,634.42 | 9,902.15 | 9,902.15 | | | | |
| 2039 | 7,297.76 | 10,880.18 | 10,880.18 | | | | |
| 2040 | 8,012.04 | 11,950.10 | 11,950.10 | | | | |
| 2041 | 8,804.25 | 13,158.90 | 13,158.90 | | | | |
| 2042 | 9,706.35 | 14,539.52 | 14,539.52 | | | | |
| 2043 | 10,749.30 | 16,116.93 | 16,116.93 | | | | |
| 2044 | 11,970.08 | 17,920.13 | 17,920.13 | | | | |
| 2045 | 13,367.68 | 19,942.10 | 19,942.10 | | | | |

Page 4

{TABLE CONTINUED ON NEXT PAGE}

# POLICY INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS *(Cont'd)*

FOR OTHER PAYMENT INTERVALS, MULTIPLY THE TOTAL PREMIUM BY:
- - .51 FOR SEMI-ANNUAL;
- - .26 FOR QUARTERLY;
- - .09 FOR MONTHLY;
- - .041 FOR BI-WEEKLY.

A $50.00 POLICY FEE IS INCLUDED IN EACH COLUMN SHOWN IN TABLE.

* THESE PREMIUMS ARE PAYABLE DURING THE PREMIUM GUARANTEE PERIOD AND WILL NOT CHANGE. WE RESERVE THE RIGHT TO CHANGE THE CURRENT LIFE INSURANCE PREMIUM FOR EACH POLICY YEAR AFTER THE PREMIUM GUARANTEE PERIOD SHOWN UNDER POLICY DATA IN THE POLICY INFORMATION SECTION. IT MAY BE MORE OR LESS THAN THAT SHOWN, BUT THE CURRENT TOTAL PREMIUM WILL NEVER BE MORE THAN THE GUARANTEED MAXIMUM TOTAL PREMIUM. SEE PREMIUMS SECTION.

** IF RIDERS ARE ATTACHED, THESE PREMIUMS INCLUDE THE ANNUAL RIDER PREMIUMS AS SHOWN IN THE TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS.

FGL MLT-U (9-98)

# POLICY INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS

POLICY NUMBER: L0521924

| POLICY YEAR BEGINNING OCT 03 | CHILDREN'S LEVEL TERM LIFE INSURANCE | RETURN OF PREMIUM |
|---|---|---|
| 2006 | $32.50 | $127.18 |
| 2007 | 32.50 | 127.18 |
| 2008 | 32.50 | 127.18 |
| 2009 | 32.50 | 127.18 |
| 2010 | 32.50 | 127.18 |
| 2011 | 32.50 | 127.18 |
| 2012 | 32.50 | 127.18 |
| 2013 | 32.50 | 127.18 |
| 2014 | 32.50 | 127.18 |
| 2015 | 32.50 | 127.18 |
| 2016 | 32.50 | 127.18 |
| 2017 | 32.50 | 127.18 |
| 2018 | 32.50 | 127.18 |
| 2019 | 32.50 | 127.18 |
| 2020 | 32.50 | 127.18 |
| 2021 | 32.50 | 127.18 |
| 2022 | 32.50 | 127.18 |
| 2023 | 32.50 | 127.18 |
| 2024 | 32.50 | 127.18 |
| 2025 | 32.50 | 127.18 |
| 2026 | 32.50 | 127.18 |
| 2027 | 32.50 | 127.18 |
| 2028 | 0.00 | 117.88 |
| 2029 | 0.00 | 117.88 |
| 2030 | 0.00 | 117.88 |
| 2031 | 0.00 | 117.88 |
| 2032 | 0.00 | 117.88 |
| 2033 | 0.00 | 117.88 |
| 2034 | 0.00 | 117.88 |
| 2035 | 0.00 | 0.00 |
| 2036 | 0.00 | 0.00 |
| 2037 | 0.00 | 0.00 |
| 2038 | 0.00 | 0.00 |
| 2039 | 0.00 | 0.00 |
| 2040 | 0.00 | 0.00 |
| 2041 | 0.00 | 0.00 |
| 2042 | 0.00 | 0.00 |
| 2043 | 0.00 | 0.00 |
| 2044 | 0.00 | 0.00 |
| 2045 | 0.00 | 0.00 |

# POLICY INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS *(Cont'd)*

| POLICY YEAR BEGINNING OCT 03 | CHILDREN'S LEVEL TERM LIFE INSURANCE | RETURN OF PREMIUM |
|---|---|---|
| 2046 | $0.00 | $0.00 |
| 2047 | 0.00 | 0.00 |
| 2048 | 0.00 | 0.00 |
| 2049 | 0.00 | 0.00 |
| 2050 | 0.00 | 0.00 |
| 2051 | 0.00 | 0.00 |
| 2052 | 0.00 | 0.00 |
| 2053 | 0.00 | 0.00 |
| 2054 | 0.00 | 0.00 |
| 2055 | 0.00 | 0.00 |
| 2056 | 0.00 | 0.00 |
| 2057 | 0.00 | 0.00 |
| 2058 | 0.00 | 0.00 |
| 2059 | 0.00 | 0.00 |
| 2060 | 0.00 | 0.00 |
| 2061 | 0.00 | 0.00 |
| 2062 | 0.00 | 0.00 |
| 2063 | 0.00 | 0.00 |
| 2064 | 0.00 | 0.00 |
| 2065 | 0.00 | 0.00 |
| 2066 | 0.00 | 0.00 |

FOR OTHER PAYMENT INTERVALS, MULTIPLY THE TOTAL PREMIUM BY:
- .51 FOR SEMI-ANNUAL;
- .26 FOR QUARTERLY;
- .09 FOR MONTHLY;
- .041 FOR BI-WEEKLY.

I-GL MLT-U (9-88)

# POLICY INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS
OTHER INSURED: LACRESHA N CALDWELL

POLICY NUMBER: L0521924

| POLICY YEAR BEGINNING OCT 03 | OTHER INSURED GUARANTEED | | POLICY YEAR BEGINNING OCT 03 | OTHER INSURED GUARANTEED | |
|---|---|---|---|---|---|
| | CURRENT | MAXIMUM | | CURRENT | MAXIMUM |
| 2006 | $181.82* | $181.82 | 2046 | $7,237.76 | $7,237.76 |
| 2007 | 181.82* | 181.82 | 2047 | 7,952.04 | 7,952.04 |
| 2008 | 181.82* | 181.82 | 2048 | 8,744.25 | 8,744.25 |
| 2009 | 181.82* | 181.82 | 2049 | 9,646.35 | 9,646.35 |
| 2010 | 181.82* | 181.82 | 2050 | 10,689.30 | 10,689.30 |
| 2011 | 181.82* | 181.82 | 2051 | 11,910.08 | 11,910.08 |
| 2012 | 181.82* | 181.82 | 2052 | 13,307.68 | 13,307.68 |
| 2013 | 181.82* | 181.82 | 2053 | 14,860.13 | 14,860.13 |
| 2014 | 181.82* | 181.82 | 2054 | 16,537.45 | 16,537.45 |
| 2015 | 181.82* | 181.82 | 2055 | 18,318.57 | 18,318.57 |
| 2016 | 181.82* | 181.82 | 2056 | 20,192.79 | 20,192.79 |
| 2017 | 181.82* | 181.82 | 2057 | 22,173.81 | 22,173.81 |
| 2018 | 181.82* | 181.82 | 2058 | 24,325.65 | 24,325.65 |
| 2019 | 181.82* | 181.82 | 2059 | 26,721.26 | 26,721.26 |
| 2020 | 181.82* | 181.82 | 2060 | 29,423.55 | 29,423.55 |
| 2021 | 181.82* | 181.82 | 2061 | 32,491.48 | 32,491.48 |
| 2022 | 181.82* | 181.82 | 2062 | 35,908.06 | 35,908.06 |
| 2023 | 181.82* | 181.82 | 2063 | 39,616.35 | 39,616.35 |
| 2024 | 181.82* | 181.82 | 2064 | 43,543.42 | 43,543.42 |
| 2025 | 181.82* | 181.82 | 2065 | 47,644.31 | 47,644.31 |
| 2026 | 181.82* | 181.82 | 2066 | 51,875.08 | 51,875.08 |
| 2027 | 181.82* | 181.82 | | | |
| 2028 | 181.82* | 181.82 | | | |
| 2029 | 181.82* | 181.82 | | | |
| 2030 | 181.82* | 181.82 | | | |
| 2031 | 181.82* | 181.82 | | | |
| 2032 | 181.82* | 181.82 | | | |
| 2033 | 181.82* | 181.82 | | | |
| 2034 | 181.82* | 181.82 | | | |
| 2035 | 2,513.49 | 2,513.49 | | | |
| 2036 | 2,741.26 | 2,741.26 | | | |
| 2037 | 2,989.01 | 2,989.01 | | | |
| 2038 | 3,267.73 | 3,267.73 | | | |
| 2039 | 3,582.42 | 3,582.42 | | | |
| 2040 | 3,938.06 | 3,938.06 | | | |
| 2041 | 4,354.65 | 4,354.65 | | | |
| 2042 | 4,833.17 | 4,833.17 | | | |
| 2043 | 5,367.63 | 5,367.63 | | | |
| 2044 | 5,950.05 | 5,950.05 | | | |
| 2045 | 6,574.42 | 6,574.42 | | | |

# POLICY INFORMATION *(Cont'd)*

## TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS *(Cont'd)*

FOR OTHER PAYMENT INTERVALS, MULTIPLY THE TOTAL PREMIUM BY:
- .51 FOR SEMI-ANNUAL;
- .26 FOR QUARTERLY;
- .09 FOR MONTHLY.
- .041 FOR BI-WEEKLY.

THESE PREMIUMS ARE PAYABLE DURING THE PREMIUM GUARANTEE PERIOD AND WILL NOT CHANGE. WE RESERVE THE RIGHT TO CHANGE THE OTHER INSURED CURRENT PREMIUM FOR EACH POLICY YEAR AFTER THE PREMIUM GUARANTEE PERIOD SHOWN UNDER POLICY, PREMIUM, AND RIDER INFORMATION IN THE POLICY INFORMATION SECTION. THE OTHER INSURED CURRENT PREMIUM MAY BE MORE OR LESS THAN THAT SHOWN, BUT IT WILL NEVER BE MORE THAN THE OTHER INSURED GUARANTEED MAXIMUM PREMIUM.

FGL MLT-U (8-98)

# DEFINITIONS

| | |
|---|---|
| **Age** | Insured's Age on his or her last birthday. |
| **Beneficiary** | The person(s) named in the application or in the most recent change on record to receive the death benefit. |
| **Contingent Beneficiary** | The person(s) named in the application or in the most recent change on record to receive the death benefit if the Beneficiary is not alive at the Insured's death. |
| **Contingent Owner** | The person(s) named in the application or in the most recent change on record to become the Owner of this policy if the Owner dies before the Insured. |
| **Expiration Date** | The date on which coverage is no longer in effect. The initial Expiration Date is shown under POLICY DATA in the POLICY INFORMATION section. The Expiration Date for any renewal term is one year after the preceding Expiration Date. |
| **Face Amount** | The amount of term life insurance coverage in effect and which is shown under POLICY DATA in the POLICY INFORMATION section. |
| **Insured** | The person named under POLICY DATA in the POLICY INFORMATION section whose life is insured under this policy. |
| **Owner** | The person(s) named in the application or in the most recent change on record entitled to ownership rights stated in this policy. |
| **Policy Date** | The date on which the initial premium is due and on which coverage starts. Premium due dates, policy months, years, and anniversaries are measured from this date. |
| **We, Our, Us, Company** | Fidelity and Guaranty Life Insurance Company. |
| **Written Request** | A request written to us and received by us. That request must be signed, dated, and notarized (if required by the form) on a form satisfactory to us. |
| **You, Your** | The Owner. |

FGL MLT-U (9-98)

# GENERAL PROVISIONS

Any reference to Beneficiary, Contingent Beneficiary, Irrevocable Beneficiary, Owner, Contingent Owner, and/or payee, may include multiple persons.

**Entire Contract**

The entire contract consists of:
- This policy;
- Copies of any application (including supplemental applications), amendment, rider, or endorsement which are attached; and
- Copies of any supplemental or reinstatement application, amendment, endorsement, or revised POLICY INFORMATION page(s) which are mailed to your last known address.

Only the President, the Secretary, or a Vice President in our Home Office can agree to change or waive any provisions which are part of the entire contract. The change or waiver must be in writing.

**Representations**

We will rely on all statements made in an application. Those statements will be considered representations and not warranties. We will not use any statement in defense of a claim unless that statement is made in an application which is part of the entire contract.

**Incontestability**

We will not contest this policy based on statements made in an application after this policy has been in effect during the Insured's lifetime for 2 years from the Date of Issue. We can contest its validity for failure to pay premiums at any time.

A new period of contestability will apply if reinstatement occurs or additional coverage is added by rider. We will not contest this policy based on statements made in the application for reinstatement or for additional coverage after this policy has been in effect during the Insured's lifetime for 2 years from the effective date of reinstatement or from the effective date of the additional coverage. For any increase in coverage, only the additional coverage added by rider will be contestable.

This Incontestability provision applies to any rider unless that rider has its own Incontestability provision, in which case that rider's provision will apply.

**Misstatement of Birth Date**

If there has been a misstatement as to the Insured's birth date, this policy's death benefit will be adjusted to what the premiums paid would have bought for the correct birth date.

**Assignment**

We will not be responsible for the validity or sufficiency of any assignment. To be binding on us, an executed assignment must be by Written Request and consented to by any Irrevocable Beneficiary. Your rights and any Beneficiary's interest will be subject to the assignment. Assignment of the policy may subject you to income and gift tax.

FG1 MLT-U (9-98)

# GENERAL PROVISIONS *(Cont'd)*

**Effective Date**

The effective date for:
- Coverage provided in the original application will be the Policy Date.
- Reinstatement will be as stated in the **Effective Date of Reinstatement** provision.

**Policy Changes**

Any Written Request to change the Owner, Contingent Owner, or Beneficiary will take effect on the date the request was originally signed, even if the Owner who signed the request or the Insured has since died. However, the change will be subject to any payments made or actions taken by us before the request was received and recorded.

We may require the return of this policy for endorsement or otherwise in the event of a change in the Owner, Contingent Owner, Beneficiary, settlement option, or other change.

**Claims of Creditors**

To the extent permitted by law and except to the extent you have assigned this policy, no benefit paid, or to become payable, will be subject to any claim or process of law by any creditor.

**Arbitration**

ANY CONTROVERSY ARISING UNDER THIS POLICY, OR ANY AMENDMENTS TO OR BREACH OF THIS POLICY, WILL BE DETERMINED AND SETTLED EXCLUSIVELY BY FINAL AND BINDING ARBITRATION HELD IN YOUR COUNTY OF RESIDENCE UNLESS ANOTHER LOCATION IS MUTUALLY AGREED UPON BY BOTH PARTIES, IN ACCORDANCE WITH THE ARBITRATION RULES AND PROCEDURES OF JAMS/ENDISPUTE OR IT'S SUCCESSOR. ARBITRATION PROCEEDINGS SHALL COMMENCE WITHIN A FIXED PERIOD OF TIME FOLLOWING THE FIRST NOTIFICATION OF ONE PARTY BY THE OTHER OF THEIR ELECTION TO ARBITRATE A DISPUTE REGARDING THE POLICY. THE ARBITRATORS WILL BE SELECTED FROM JAMS/ENDISPUTE'S PANEL OF RETIRED JUDGES. ALL ARBITRATION PROCEEDINGS SHALL BE PAID BY US, WITH THE EXCEPTION OF THE COST OF REPRESENTATION OF THE POLICY OWNER. SHOULD THE ARBITRATOR FIND THAT THE DISPUTE IS WITHOUT SUBSTANTIAL JUSTIFICATION, THE ARBITRATOR SHALL HAVE THE AUTHORITY TO ORDER THAT THE COST OF THE ARBITRATION PROCEEDINGS BE PAID BY THE POLICY OWNER. ANY AWARD RENDERED THROUGH ARBITRATION WILL BE FINAL AND BINDING ON EACH AND ALL PARTIES INVOLVED, AND JUDGMENT MAY BE ENTERED THEREON IN ANY COURT OF COMPETENT JURISDICTION.

**Termination of Policy**

This policy will end at the earliest of the following events:
- The grace period ends without receipt of required payment.
- The policy is exchanged for a new policy.
- The Expiration Date of the current term unless the policy is renewed for another term.
- The Insured dies.

Coverage is not in effect on the Expiration Date of any term unless this policy is renewed for another term.

**Nonparticipating**

This policy does not share in our profits or surplus. No dividends will be paid.

FGL MLT-U (9-98)                                                                                       AL, MS

# OWNERSHIP

**Ownership Succession**

If you die before the insured, at your death, ownership of this policy will pass to the person(s) then living in the order which follows:
- Any joint Owner(s).
- Any Contingent Owner.
- Estate of the last Owner to die.

If more than one natural person succeeds to the ownership rights of this policy, then such persons will own this policy as Joint Owners. Any instructions or designations of the prior Owner will continue unless changed in accordance with this policy by the succeeding Owner.

**Ownership Rights**

While the Insured is alive, you may:
- Exercise any of the rights under this policy.
- Assign this policy.
- Subject to our agreement, change or amend this policy.

The exercise of any ownership right is subject to the written consent of any Joint Owner(s).

**Change of Owner and Contingent Owner**

While the insured is alive, you may transfer ownership by Written Request . If you transfer ownership, any earlier choice of any Contingent Owner will be canceled. A change in ownership may subject you to income and gift tax.

# BENEFICIARY

**Irrevocable Beneficiary**

Any Beneficiary may be named an irrevocable Beneficiary. The consent of any irrevocable Beneficiary is needed to exercise any ownership right, including assignment of the policy, except the following:
- Change the frequency of premium payment.
- Reinstate this policy.

**Change of Beneficiary**

While the insured is alive, you may change the Beneficiary and any Contingent or irrevocable Beneficiary by Written Request. Irrevocable Beneficiaries must give written consent to any such change.

**Payment to Beneficiary**

Before making any payment, we may require evidence as to the identity, age, and other facts about any person or class designated as the Beneficiary. We are entitled to make payments based on that evidence.

FGL MLT-U (9-98)

# PREMIUMS

**Premium Payments**

All premium payments:
- Must be paid on or before their due date.
- Must be made at our Home Office or any administrative office that we maintain.
- Must be in the currency of the United States of America.
- May be made by a currently dated check or money order made payable to Fidelity and Guaranty Life Insurance Company.

Before any insurance becomes effective, the first premium for each term must be paid while the Insured is alive.

We will issue a receipt on request.

Premiums may be paid at annual, semi-annual, quarterly, monthly, or bi-weekly intervals. The charge for different premium payment intervals is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section. You may change the premium payment interval on any policy anniversary. Our consent is needed if any change results in a premium of less than $25.

**Renewal**

The first premium for each term is due on the Expiration Date of the preceding term.

The life insurance and rider coverage will automatically renew for a 1 year term if:
- Under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section it indicates that the coverage may be continued.
- All premiums for the preceding expired term have been paid and the renewal premium for the new term has been paid.
- The Expiration Date of the prior term is before the policy anniversary on which the Insured is Age 95.

**Adjustment of Renewal Premiums**

Renewal premiums are shown in the TABLE OF ANNUAL RENEWAL PREMIUMS in the POLICY INFORMATION section. For each policy year after the Premium Guarantee Period shown under POLICY DATA in the POLICY INFORMATION section, we reserve the right to change the Current Life Insurance Premium shown in the table. It may be more or less than that shown, but the Current Total Premium will never be more than the Guaranteed Maximum Total Premium shown in that table. Before each policy year, we will send to you at your last known address written notice of the premium due for the next policy year.

Any change in premium will be made on the same basis for all policies in effect the same length of time, issued to Insureds of the same Premium Class and issue age. No change in Premium Class or premium will occur on renewal because the Insured's health has worsened or occupation has changed. Each change will be based on our expectations as to future mortality, investment earnings, expense, and persistency experience.

**Grace Period**

We will allow a 31 day grace period after the premium due date to pay each premium after the first. This policy remains in effect during any grace period. If a premium is not paid by the end of that period, this policy will terminate as of the premium due date. If the Insured dies during a grace period, the overdue premium from its due date to the end of that period will be deducted from the death benefit. As used here, "premium" means the premium actually billed in the premium notice.

FGL MLT-U (9-98)

# REINSTATEMENT

**Reinstatement
Requirements**

If this policy terminates as provided in the **Grace Period** provision, it may be reinstated within 3 years from the due date of the first unpaid premium. "Reinstatement" means to put this policy's coverage back into effect.

We will require for each life insured under this policy and any attached rider:

- Written application for reinstatement;
- Evidence satisfactory to us that each insured is insurable at the Premium Class shown under POLICY DATA and POLICY, PREMIUM, and RIDER INFORMATION sections in the POLICY INFORMATION section at the time the policy terminated; and
- Payment of overdue premiums with interest from their due dates at 6% compounded annually.

**Effective Date of
Reinstatement**

The effective date of reinstatement will be the date we approve the application for reinstatement. Once approved, we will mail to you at your last known address:

- A copy of the reinstatement application showing the effective date of reinstatement; and
- A copy of any supplemental application which may have been required as evidence of insurability.

Page 10

# CONVERSION

**New Policy**

Subject to the requirements stated below, while this policy is in effect, and through the Policy Convertible Through Date shown under POLICY DATA in the POLICY INFORMATION section, this policy may be converted without evidence of insurability to a new policy on the life of the Insured.

We will require:
* Your written application for conversion.
* That the Insured be alive on the date of that application.
* Written consent for conversion from any assignee and any irrevocable Beneficiary.
* Payment of any required premium.

Any new policy:
* May not be term insurance.
* May not insure more than one life.
* Must be on a plan being offered by us for this purpose on the date of conversion.
* Will have the same restrictions as this policy and any attached riders.
* Will be issued and effective as of the date of the written application for conversion.

The amount of insurance for any new policy will not be:
* Less than the minimum required for the plan selected. (At least one plan will always be available for conversion.)
* More than the amount of insurance in effect on this policy at the date of conversion.

The premium rate on any new policy will be based on:
* The Insured's Premium Class for this policy.
* The Insured's Age on the new Policy Date.
* Our premium rates in effect on the new Policy Date.

Evidence of insurability satisfactory to us will be required only if the new policy is to include:
* Any rider providing additional benefits.
* An option to apply dividends to purchase one year term insurance additions.

**Suicide and Incontestability**

Any new policy's provisions for suicide and incontestability will have the same effective date as those provisions have in this policy. However, if the new policy contains any new benefits provided by rider, any provisions for suicide and incontestability in such new rider will start on that rider's effective date.

FGL MLT-U (9-98)

# DEATH BENEFIT

**Payment of
Death Benefit**

Payment of the death benefit will be made at our Home Office.

We will require:
* That death occur while this policy is in effect and before the Expiration Date of any term;
* Return of this policy or a certification (on a form we accept) stating that this policy has been lost or destroyed;
* Proof of the Insured's death on a form we accept; and
* A Written Request for the death benefit.

The death benefit to be paid at the Insured's death will be:
* The Face Amount in effect; plus
* Any additional benefit provided by rider; plus
* The part of any premium paid beyond the Insured's month of death, unless the premium was waived; less
* The unpaid premium from its due date to the end of the grace period if death occurs within the grace period.

Subject to any assignment, any death benefit due will be paid to the person(s) living on the date of such death in the order which follows:
* The Beneficiary.
* Any Contingent Beneficiary.
* The Insured's estate.

If any Beneficiary or Contingent Beneficiary dies at the same time as the Insured or within 10 days after the death of the Insured, the death benefit will be paid as if the Insured had survived such Beneficiary or Contingent Beneficiary.

**Interest Paid on
Death Benefit**

Interest will be paid on the death benefit as required by state law.

**Suicide Exclusion**

If the Insured dies by suicide, while sane or insane, within 2 years from the Date of Issue or from the effective date of the last reinstatement, if any, no death benefit will be paid. Instead, we will limit payment to:
* The premiums paid for benefits on the Insured's life; less
* The premiums paid for benefits on any person other than the Insured.

This policy must be in effect on the date of the Insured's suicide.

This provision does not apply if this policy was issued to a Missouri citizen unless it can be proven that the Insured intended suicide when this policy was applied for.

FGL MLT-U (9-98)

# METHODS OF SETTLEMENT

**Payment of Proceeds**

When the insured dies, all or part of any proceeds payable may be paid under a settlement option rather than in a lump sum.

We may issue an annuity contract to provide payments under settlement options 1, 2, 3, or 4. If the payee elects to receive a lump sum, at our option, payment will be made into an interest-bearing checking account established in the name of the payee. The payee will be able to withdraw all or part of the proceeds in the account at any time.

**Interest Paid on Proceeds**

Interest will be paid on the proceeds as required by state law.

**Payee**

The payee(s) will be the recipient of the death benefit.

**Election of Option**

While the insured is alive, you may, by Written Request, elect or change a settlement option to take effect at the insured's death. The recipient of the death benefit may not change the election you make. If no option is in effect at the insured's death, the recipient of the death benefit may elect one by Written Request.

An election to receive proceeds under options 1, 2, 3, or 4 cannot be changed after payments start.

After we record any option election or change, it will take effect on the date the request was signed. That election or change will be subject to any payment made or action taken by us before we receive the request and record the change.

Descriptions of the settlement options follow. A table showing the guaranteed monthly payments under each option follows the descriptions of settlement options. Additional settlement options may be offered at the time proceeds are payable.

**Payment**

Payments for an option will:
• Be made at the Home Office.
• Be paid by check or draft.

Before making any payment, we may require proof of existence and/or birth date of any payee or the insured.

In all cases, our written consent for payment under any option will be required if:
• Any payee is a corporation, partnership, association, trustee, or assignee.
• The amount left with us is less than $2,000.
• Any annuity or interest payment is less than $20.

# METHODS OF SETTLEMENT *(Cont'd)*

**Option 1**
**Income for a**
**Fixed Period**

Payments are guaranteed for the number of years and months chosen, which may not be less than 5 years nor more than 25 years. If the payee dies before the end of the fixed period, a death benefit consisting of the remaining guaranteed annuity payments, as scheduled, will be paid.

**Option 2**
**Life Income With a**
**Guaranteed Period**

Payments are guaranteed for the number of years chosen, which may not be less than 5 years nor more than 25 years. If the payee is alive at the end of the guaranteed period, payments will continue for as long as the payee is alive. If the payee dies before the end of the guaranteed period, a death benefit, consisting of the remaining guaranteed annuity payments, as scheduled, will be paid.

**Option 3**
**Life Income**

Payments will be made for as long as the payee is alive. No payments will be made after the payee's death.

**Option 4**
**Joint and Survivor**
**Life Income**

Payments will be made for as long as either the payee or joint payee is alive. The payments will:
- Be paid in a joint life income amount while both the payee and joint payee are alive.
- Continue to be paid after the death of either payee at the rate requested and for as long as the remaining payee or joint payee survives.
- Cease at the death of both the payee and joint payee.

**Option 5**
**Interest**

We will hold the proceeds until withdrawn by the payee or we have made payment at the payee's death.

Interest credited on those proceeds will be paid out as elected. On request, we will hold the interest for up to 10 years without payment. Interest payments may be paid no more frequently than monthly.

The payee may withdraw all or part of the proceeds at any time. Also, by request, we will stop payments under this option and the remaining proceeds and interest to date will be paid as described under Option 1.

If the payee dies, any amount not yet paid, plus any unpaid interest, will be paid in one sum to the Payee's estate.

**Amount of Payment**

The amount of payments received under a settlement option will depend on the:
- Amount of proceeds payable;
- Settlement option chosen;
- Payment frequency chosen; and
- Age last birthday of the person over whose life payments are made if Options 2, 3, or 4 are chosen.

We will then compare the mortality and interest rate factors reflected in the **TABLE OF GUARANTEED MONTHLY PAYMENTS** to the factors reflected in the current rates for any single premium immediate annuities which we may then offer and which the payee would be eligible to purchase. The payments will be based on whichever factors result in higher payments.

Any annuity contract sent to the payee will show the settlement option and amount and frequency of annuity payments, all of which will be fixed as of the date the annuity contract is issued.

Page 14

# METHODS OF SETTLEMENT *(Cont'd)*

## TABLE OF GUARANTEED MONTHLY PAYMENTS
Minimum Amount for Each $1,000 Applied

The Guaranteed Monthly Payments are based on a 3% effective annual interest rate. Options 2 and 3 are also based on the 1983 Male Table "a" for Individual Annuities. Option 4 is also based on the 1983 Table "a" for Individual Annuities with a mortality blend of one male and one female.

### Option 1. Income For a Fixed Period

| Period (Years) | Payment | Period (Years) | Payment | Period (Years) | Payment |
|---|---|---|---|---|---|
| 5 | $17.95 | 8 | $11.71 | 15 | $6.89 |
| 6 | 15.18 | 9 | 10.58 | 20 | 5.53 |
| 7 | 13.20 | 10 | 9.64 | 25 | 4.72 |

### Option 2. Life Income With a 10 Year Guaranteed Period

| Age | Payment | Age | Payment | Age | Payment |
|---|---|---|---|---|---|
| 50 | $4.24 | 55 | $4.65 | 60 | $5.17 |
| 51 | 4.31 | 56 | 4.74 | 65 | 5.84 |
| 52 | 4.39 | 57 | 4.84 | 70 | 6.65 |
| 53 | 4.47 | 58 | 4.94 | 75 | 7.54 |
| 54 | 4.56 | 59 | 5.05 | | |

### Option 3. Life Income

| Age | Payment | Age | Payment | Age | Payment |
|---|---|---|---|---|---|
| 50 | $4.29 | 55 | $4.72 | 60 | $5.31 |
| 51 | 4.36 | 56 | 4.83 | 65 | 6.14 |
| 52 | 4.45 | 57 | 4.94 | 70 | 7.29 |
| 53 | 4.53 | 58 | 5.05 | 75 | 8.91 |
| 54 | 4.63 | 59 | 5.18 | | |

### Option 4. Joint and 50% Survivor Life Income

| Payee Age | Joint Payee | | | | | |
|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 |
| 50 | $4.10 | $4.28 | $4.50 | $4.77 | $5.10 | $5.49 |
| 55 | 4.29 | 4.49 | 4.73 | 5.03 | 5.40 | 5.83 |
| 60 | 4.51 | 4.74 | 5.01 | 5.35 | 5.78 | 6.26 |
| 65 | 4.78 | 5.04 | 5.35 | 5.74 | 6.21 | 6.80 |
| 70 | 5.10 | 5.39 | 5.75 | 6.19 | 6.75 | 7.45 |
| 75 | 5.44 | 5.78 | 6.19 | 6.71 | 7.37 | 8.22 |

Payment amounts for other combinations of years, ages, and rates will be furnished on request.

Page 15

FGL MLT-U (9-98)

# Accidental Death Benefit Rider

*This rider is part of the policy to which it is attached. The premium is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. This rider will not increase the guaranteed policy values.*

| | |
|---|---|
| **Definitions** | Insured. The Insured(s) as shown under POLICY DATA in the POLICY INFORMATION section of the policy. |
| | You, Your. The Owner of the policy. |
| **Effective Date** | This rider is effective on the date shown under the POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. |
| **Benefit** | Subject to this rider's provisions, when the Insured dies as the result of an accident, this rider provides an additional death benefit. |
| | The amount of this rider's benefit is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. Payment of this rider's benefit will be in addition to any death benefit which is paid under the policy. |
| **Benefit Requirements** | Subject to this rider's provisions, we will pay this rider's benefit to the Beneficiary of the policy if the Insured's death occurs:<br>• While this rider is in effect;<br>• Before the policy anniversary on which the Insured is age 70;<br>• Within 120 days from the date of the accident; and<br>• Directly and independently of all other causes as a result of accidental bodily injury. |
| | We will have the right, at our expense, to examine the Insured's body and to have an autopsy performed, unless the law prohibits us from doing so. |
| **Benefit Limitations** | No benefit will be paid for death which results directly or indirectly from:<br>• Suicide, while sane or insane.<br>• War or any act of war, whether or not the Insured is serving in the military, naval, national guard, or air forces of any country, international organization, or combination of countries at war. War can be declared or not, and includes hostilities and any armed aggression and resistance to such aggression.<br>• Voluntary participation in a riot.<br>• Committing or attempting to commit an assault or felony.<br>• Resisting or fleeing from arrest.<br>• Sickness of mind or body, including related medical or surgical treatment.<br>• Bacterial infection unless caused by an external accidental bodily injury.<br>• Voluntary taking of drugs, narcotics, barbiturates, or sedatives, unless, as prescribed by a physician.<br>• Voluntary taking of alcohol in combination with any drug, medication, or sedative unless prescribed by a physician and in accordance with any label instructions as to its use in combination with alcohol.<br>• Voluntary taking, inhaling, or absorbing of poison, gas, or fumes, except while performing occupational duties.<br>• Any sickness or injury to the body, fatal or otherwise, which is caused from or is sustained from alcohol intoxication. (Intoxication will have the meaning prescribed by the law governing the operation of motor vehicles in the jurisdiction where the death occurred.) |

*(Continued)*

AL

# Accidental Death Benefit Rider *(Cont'd)*

**Benefit Limitations** *(Cont'd)*  • Travel or flight in or descent from or with any kind of aircraft, except as a passenger traveling for transportation only.

Such aircraft must be:
- Certified as airworthy by the appropriate authority of the country of its registry.
- Flown by a licensed pilot.

Such aircraft must not be:
- Operated by or for any military, naval, national guard, or air forces.
- Used for training, practice, test, experimental, exhibition, or stunt purposes, or any other form of aerial activity other than passenger transportation.

**Incontestability**  We will not contest this rider based on statements made in an application after this rider has been in effect during the insured's lifetime for 2 years from:
- The policy's Date of Issue if part of the policy on that date; or
- This rider's effective date if made a part of the policy after the policy's Date of Issue.

A new period of contestability will begin if:
- Reinstatement occurs; or
- This rider's benefit increases.  (Only the amount of increase in this rider's benefit is contestable.)

We will not contest this rider based on statements made in the application for reinstatement or the rider's benefit increases during the insured's lifetime for 2 years from the effective date of those events.

**Nonparticipating**  Dividends are not payable.

**Rider Termination**  This rider will end at the earliest of the following events:
- The policy terminates.
- The policy anniversary on which the insured is age 70.
- The policy is continued as paid-up endowment insurance, if available.
- Your Written Request.

**Confirmation of Changes**  We will mail to your last known address confirmation of any changes to the rider's benefit, including the effective date of any change.

*Signed for the Company.*

Fidelity and Guaranty Life Insurance Company

President

# Waiver of Premium Rider—Unemployment

*This rider is a part of the policy to which it is attached. This rider will not increase the guaranteed policy values, if any. There is no premium charge for this rider.*

| | |
|---|---|
| **Effective Date** | This rider is effective on the policy's Date of Issue. |
| **Unemployment** | The Insured is considered to be unemployed if he/she:<br>• Is registered with his/her state unemployment office or other recognized employment agency; and<br>• Has not resigned, retired (whether voluntary or mandatory), or voluntarily forfeited his/her salary, wages, or employment income. |
| **Benefit** | Subject to this rider's provisions and after we approve this benefit, we will waive future premiums on the policy while Unemployment continues. Premiums will be waived:<br>• Beginning 30 days after the start of Unemployment;<br>• For up to six months during a period of continuous Unemployment; and<br>• At the payment frequency in effect at the start of Unemployment. |
| **Successive Periods of Unemployment** | We will consider successive periods of Unemployment as a single period if:<br>• The Insured qualifies for this benefit for a period of less than six months; and<br>• The Insured subsequently becomes unemployed within two months. |
| **Benefit Limitations** | Once benefits have been waived for a period of Unemployment, the Insured is not eligible for benefits under this rider for five years. If the Insured becomes unemployed at least five years after the last premium was waived, you may again be eligible for this benefit. |
| **Proof of Continuance of Unemployment** | The Insured must furnish us with proof of continuance of Unemployment. Such proof must:<br>• Consist of proof of unemployment compensation from a state or federal agency created to provide unemployment benefits;<br>• Be provided to us at monthly intervals; and<br>• Be received by us while the Insured is alive. |
| **Benefit Termination** | For any single period of Unemployment, no further premiums will be waived after the earliest of the following events:<br>• The policy terminates.<br>• The policy continues as paid-up endowment insurance.<br>• This rider is canceled.<br>• Proof is not furnished to us.<br>• Unemployment ceases.<br>• Six months of premium payments have been waived.<br>• The policy anniversary on which the Insured is age 65. |
| **Written Request** | We will require a written request for this benefit. |
| **Nonparticipating** | Dividends are not payable. |

*(Continued)*

# Waiver of Premium Rider—Unemployment *(Cont'd)*

**Rider Termination**

This rider will end at the earliest of the following events:
- Your Written Request.
- The policy continues as paid-up endowment insurance.
- The policy terminates.
- The policy's extended term or reduced paid-up insurance option, if any, goes into effect.
- The policy anniversary on which the Insured is age 65.

**Confirmation of Changes**

We will mail to your last known address confirmation of any changes, including the effective date of any change.

*Signed for the Company.*

Fidelity and Guaranty Life Insurance Company

*[signature]*

President

# Return of Premium Rider

*This rider is part of the policy to which it is attached. The premium is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. Except as stated in this rider, all other policy provisions apply.*

**Additional Definitions**   <u>Other Insured</u>. The Other Insured(s) as shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy.

**Effective Date**   This rider is effective on the policy's Date of Issue.

**Benefit**   While this rider is in effect, we will pay a Return of Premium benefit if the policy ends after the fifth policy year and on or before the initial Expiration Date. The amount of the Return of Premium benefit will be the total of premiums paid on the policy (including any rider premiums) times the percentage shown below. The percentage differs depending upon the term period shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. The Return of Premium benefit will be reduced by any amount paid under any rider attached to the policy, such reduction not to exceed the Return of Premium benefit. However, no Return of Premium benefit is payable if any Insured or Other Insured dies while this rider is in effect.

If the Return of Premium benefit is greater than the amount of insurance in effect on the policy, the amount of insurance will be increased to be 105% of the Return of Premium benefit.

| end of policy year | 15-year policy term | 20-year policy term | 25-year policy term | 30-year policy term |
|---|---|---|---|---|
| 1-5 | 0% | 0% | 0% | 0% |
| 6 | 5% | 3% | 2% | 1% |
| 7 | 10% | 6% | 4% | 2% |
| 8 | 15% | 9% | 6% | 3% |
| 9 | 20% | 12% | 8% | 4% |
| 10 | 25% | 15% | 10% | 5% |
| 11 | 40% | 22% | 13% | 7% |
| 12 | 55% | 29% | 16% | 9% |
| 13 | 70% | 36% | 19% | 11% |
| 14 | 85% | 43% | 22% | 13% |
| 15 | 100% | 50% | 25% | 15% |
| 16 | | 60% | 30% | 17% |
| 17 | | 70% | 35% | 19% |
| 18 | | 80% | 40% | 21% |
| 19 | | 90% | 45% | 23% |
| 20 | | 100% | 50% | 25% |
| 21 | | | 60% | 30% |
| 22 | | | 70% | 35% |
| 23 | | | 80% | 40% |
| 24 | | | 90% | 45% |
| 25 | | | 100% | 50% |
| 26 | | | | 60% |
| 27 | | | | 70% |
| 28 | | | | 80% |
| 29 | | | | 90% |
| 30 | | | | 100% |

*(Continued)*

# Return of Premium Rider *(Cont'd)*

| | |
|---|---|
| **New Policy Benefit Option** | If you terminate this policy, any benefit payable under the Return of Premium rider may be transferred to a new policy, provided the Return of Premium rider is part of the new policy. The new benefit will be the greater of:<br>• The sum of the premiums paid under this policy and the new policy, multiplied by the percentage shown in the table (under this rider's Benefit provision) for the policy term and the then current number of years the new policy has been in effect; or<br>• The Return of Premium benefit payable under this policy if a new policy is not purchased. |
| **Nonforfeiture Options** | After the 5th policy year and if the policy lapses as provided in the policy's Grace Period provision, the policy will have a cash value equal to the Return of Premium benefit. If not more than 60 days have passed since the unpaid premium's due date, one of two options will be available:<br>• Cash Surrender - The policy may be surrendered for its cash value. The cash value is equal to the Return of Premium benefit. We will require your Written Request and return of the policy or a certification (on a form we accept) stating that the policy has been lost or destroyed.<br>• Extended Level Term Insurance - If no option is selected, this option will be automatic. Under this option, you may continue the policy as nonparticipating extended level term insurance. The term period will start on the due date of the unpaid premium. That period will be determined by applying the cash value as a net single premium for such insurance. At the end of that period, the insurance will terminate and there will be no cash value remaining. |
| **Surrender of Insurance Under Extended Level Term Insurance Option** | Any insurance provided under the Extended Level Term Insurance Option may be surrendered for its cash value. The cash value will equal the net single premium for the insurance remaining. If such surrender occurs within 30 days after a policy anniversary, the value will not be less than the cash value on that anniversary.<br><br>We will require:<br>• Your Written Request.<br>• Return of the policy or a certification (on a form we accept) stating that the policy has been lost or destroyed. |
| **Deferral of Cash Value Payment** | We reserve the right to defer payment of the cash value for up to 6 months after we receive your Written Request. We will pay interest at a rate not less than the minimum rate required by state law, if the deferral period is 30 days or more. |
| **Basis of Policy Values** | Cash value amounts equal or exceed the values based on:<br>• 1980 CSO Nonsmoker and Smoker Tables;<br>• Age Last Birthday;<br>• Interest rate of 5.75% per year;<br>• Death occurring at the end of the policy year<br><br>Extended Level Term Insurance Option is based on:<br>• 1980 CET Nonsmoker and Smoker Tables;<br>• Age Last Birthday;<br>• Interest rate of 5.75% per year;<br>• Death occurring at the end of the policy year<br><br>Policy values equal or exceed those required by the state in which this policy is delivered. A detailed statement of the method used to compute those values has been filed with the Insurance department of that state. |

*(Continued)*

# Return of Premium Rider *(Cont'd)*

| | |
|---|---|
| **Nonparticipating** | Dividends are not payable. |
| **Rider Termination** | This rider will end at the earliest of the following events: |
| | ▪ Expiration Date of the initial term period. |
| | ● Any Nonforfeiture Option goes into effect. |
| | ● Your Written Request. |
| | ● The policy terminates. |
| | ● Any Other Insured dies. |
| **Confirmation of Changes** | We will mail to your last known address confirmation of any changes to this rider's benefits, including the effective date of any change. |

*Signed for the Company.*

## Fidelity and Guaranty Life Insurance Company

President

# Children's Level Term Life Insurance Rider

*This rider is part of the policy to which it is attached. The premium for this rider is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. This rider will not increase the guaranteed policy values.*

| | |
|---|---|
| **Definitions** | Insured. The Insured as shown under POLICY DATA in the POLICY INFORMATION section of the policy. |
| | You, Your. The Owner of the policy. |
| | Insured Child. Any person who is at least 15 days old and who:<br>• Is the Insured's natural child; or<br>• Became the Insured's stepchild or legally adopted child before age 19. |
| | An Insured Child does not include any child who:<br>• Is found uninsurable before this rider's effective date; and<br>• Is excluded from coverage by your written consent on an amendment to the application. |
| **Effective Date** | This rider is effective on the date shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. |
| **Benefit** | Subject to this rider's provisions, we will pay a level term life insurance benefit at the death of each Insured Child. The amount of that benefit is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy. It will be paid to that Insured Child's Beneficiary. We will require proof of death on a form we accept. |
| **Beneficiary** | Unless changed, the Beneficiary for an Insured Child will be the Insured. While an Insured Child is alive, you may name or change any Beneficiary or Contingent Beneficiary for that child by Written Request. Any such Written Request will take effect on the date the request was originally signed, even if the Owner who signed the request or the Insured Child has since died. However, the change will be subject to any payments made or actions taken by us before the request was received and recorded. |
| | At an Insured Child's death, this rider's benefit for that child will be paid in the order which follows:<br>• To the Beneficiary.<br>• To any Contingent Beneficiary if the Beneficiary is not then alive.<br>• To the Insured Child's estate if the Beneficiary or any Contingent Beneficiary is not then alive. |
| **Benefit Termination** | An Insured Child's coverage under this rider will end:<br>• On that child's 25th birthday;<br>• Two years after becoming an Insured Child if we have not received notification as described in the Notification provision; or<br>• When the rider terminates. |
| **Notification** | Within two years of a child becoming an Insured Child, you must notify us in writing of that child's name and birth date. |

*(Continued)*

# Children's Level Term Life Insurance Rider *(Cont'd)*

**Incontestability**

We will not contest this rider based on statements made in an application after this rider has been in effect during the lifetime of any Insured Child for 2 years from:
- The policy's Date of Issue if part of the policy on that date; or
- This rider's effective date if made a part of the policy after the policy's Date of Issue.

A new period of contestability will begin if reinstatement occurs.

We will not contest this rider based on statements made in the application for reinstatement during any Insured Child's lifetime for 2 years from the effective date of reinstatement.

**Misstatement of Birth Date**

If any Insured Child dies whose birth date has been misstated, this rider's benefit will only be paid if that child was an Insured Child as defined in this rider based on that child's correct birth date.

**Paid-Up Term Life Insurance**

If this rider is in effect and the Insured dies, this rider will automatically terminate at the Insured's death. We will issue a paid-up term life insurance policy to each Insured Child in the amount of this rider's benefit. Unless otherwise provided, the Owner of that policy will be the Insured Child and the Beneficiary will be the Insured Child's estate. That policy will terminate on the Insured Child's 25th birthday.

The paid-up term life insurance policy may be surrendered for its cash value. This value will be furnished on request. The cash value will be the reserve for the paid-up term life insurance. The basis of that policy's values will be the same as that shown in the policy to which this rider is attached.

**Conversion of Level Term Life Insurance**

The insurance on each Insured Child may be exchanged for a new policy on the life of that child:
- While such insurance is in effect.
- If exchange takes place within 31 days before that child's 25th birthday.

We will require:
- Your written application for exchange.
- That the Insured Child be alive on the date of that application.
- Written consent for exchange from any irrevocable Beneficiary under this rider.
- Payment of any required premium.

Any new policy:
- May not be term insurance.
- May not insure more than one life.
- Must be on a plan being offered by us for this purpose on the date of exchange.
- Will be issued and effective on the Insured Child's 25th birthday.

The amount of insurance for any new policy will not be:
- Less than the minimum required for the plan selected.  (At least one plan will always be available for exchange.)
- Less than the amount of this rider's benefit.
- More than five times the amount of this rider's benefit without evidence of insurability.

TGL CR1 (3-98)

# Children's Level Term Life Insurance Rider *(Cont'd)*

**Conversion of Level Term Life Insurance (Cont'd)**

Evidence of insurability satisfactory to us will be required if the new policy is to include:
- Any rider providing additional benefits.
- An option to apply dividends to purchase one year term insurance additions.

The premium rate on any new policy will be based on:
- That Insured Child's Premium Class for this rider.
- That Insured Child's attained age on the new Policy Date.
- Our premium rates in effect on the new Policy Date.

The time period in any new policy's **Suicide** and **Incontestability** provisions will have the same Effective Date as this rider's **Incontestability and Suicide of an Insured Child** provisions. If the new policy contains any new benefits provided by rider, the time period in any **Suicide** and/or **Incontestability** provision(s) in such new rider will start on that rider's Date of Issue (Effective Date).

When this provision is exercised, this rider's coverage will end on that Insured Child.

**Suicide of the Insured**

The Paid-Up Term Life Insurance provision will apply if the Insured dies by suicide. This rider must be in effect on the date of the Insured's suicide.

**Suicide of an Insured Child**

If an Insured Child dies by suicide, while sane or insane, within 2 years from this rider's effective date, no benefit will be paid on that child.

**Nonparticipating**

Dividends are not payable.

**Rider Termination**

This rider will end at the earliest of the following events:
- The policy terminates.
- The policy anniversary on which the youngest Insured Child reaches age 25.
- The policy continues as paid-up endowment insurance, if available.
- Your Written Request. This rider will end on the next Monthly Date following the receipt of your Written Request.

**Confirmation of Changes**

We will mail to your last known address confirmation of any changes to this rider's benefits, including the effective date of any change.

*Signed for the Company.*

Fidelity and Guaranty Life Insurance Company

President

FGL CR1 (3-96)

# Other Insured's Renewable Term Life Insurance Rider

*This rider is part of the policy to which it is attached. This rider will not increase the guaranteed policy values, if any. Except as stated in this rider, all other policy provisions apply.*

**Definitions**

<u>Other Insured</u>. The Other Insured(s) as shown under POLICY, PREMIUM, AND RIDER INFORMATION in the  POLICY INFORMATION section of the policy.

<u>You, Your</u>. The Owner of the policy.

**Effective Date**

The effective date for each Other Insured's coverage under this rider is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy.

**Benefit**

Subject to this rider's provisions, a level term life insurance benefit will be paid at the death of each Other Insured. The amount of that benefit and the initial term period for which coverage is provided are shown for each Other Insured under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy.

We will require proof of death on a form we accept.

If an Other Insured dies within 31 days after the death of the person whose life is insured under the policy, without your having converted this insurance for a new separate policy, we will pay this rider's benefit for that Other Insured. If you converted this insurance, we will pay the death benefit under the new policy plus any amount not converted under this rider.

**Renewal**

After the initial term period for an Other Insured, that Other Insured's coverage will automatically renew for successive 1-year term periods unless coverage ends as described under the **Benefit Termination** provision.

However, coverage will not be renewed after that Other Insured is age 94.

**Beneficiary**

By Written Request, you may name or change any Beneficiary or Contingent Beneficiary for any Other Insured. Such Other Insured's Beneficiary or Contingent Beneficiary will be the person(s) on record to receive this rider's benefit for that Other Insured. Any such Written Request will take effect on the date the request was originally signed, even if the Owner who signed the request or any Other Insured whose life is insured under this rider has since died. However, the change will be subject to any payments made or actions taken by us before the request was received and recorded.

Subject to any assignment, the benefit for a deceased Other Insured will be paid to the person(s) living on the date of such Other Insured's death in the order which follows:
- The Beneficiary.
- Any Contingent Beneficiary.
- The Other Insured's estate.

*(Continued)*

# Other Insured's Renewable Term Life Insurance Rider *(Cont'd)*

**Premium**

The premium for each Other Insured's coverage is shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy.

Renewal premiums for each Other Insured are shown in the TABLE OF ANNUAL RENEWAL PREMIUMS - RIDERS in the POLICY INFORMATION section of the policy. For each policy year after the Premium Guarantee Period shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy, we reserve the right to change any OTHER INSURED - CURRENT PREMIUM shown in that table. It may be more or less than that shown, but it will never be more than the OTHER INSURED - GUARANTEED MAXIMUM premium shown in that table. Before each policy year, we will send to you at your last known address written notice of the premium due for the next policy year.

Any change in premium will be made on the same basis for all riders of this type in effect for the same length of time issued to Other Insureds of the same Premium Class, Sex (if the premium for the policy was based on sex), and issue age. No change in Premium Class or premium will occur on renewal because any Other Insured's health has worsened or occupation has changed. Each change will be based on our expectations as to future mortality, investment earnings, expense, and persistency experience.

**Benefit Termination**

Each Other Insured's coverage under this rider will end at the earliest of the following events:
* The anniversary of the effective date for that Other Insured's coverage on which that Other Insured is age 95.
* Conversion to a new policy.
* The rider terminates.
* That Other Insured's death.
* Your Written Request.

**Incontestability and Suicide Exclusion**

The policy's Incontestability and Suicide Exclusion provisions also apply to this rider; any reference to Insured in the policy's provisions will include any Other Insured.

**Misstatement of Birth Date or Sex**

An Other Insured's coverage will be adjusted if:
That Other Insured's birth date has been misstated.
That benefit is based on sex and that Other Insured's sex has been misstated.

**Conversion of Level Term Life Insurance**

The insurance on each Other Insured may be converted to a new policy on the life of that Other Insured if the conversion is made:
* While such insurance is in effect.
* Anytime before the CONVERTIBLE THRU date shown under POLICY, PREMIUM, AND RIDER INFORMATION in the POLICY INFORMATION section of the policy or within 31 days after the death of the Insured under the policy.

We will require:
* Your written application for conversion.
* That the Other Insured to be covered under the new policy be alive on the date of that application.
* Written consent for conversion from any Irrevocable Beneficiary for that Other Insured under this rider.
* Payment of any required premium for the new policy.

*(Continued)*

## Other Insured's Renewable Term Life Insurance Rider (Cont'd)

| | |
|---|---|
| **Conversion of Level Term Life Insurance (Cont'd)** | Any new policy:<br>• May not be term insurance.<br>• May not insure more than one life.<br>• Must be on a plan offered by us for this purpose on the date of conversion.<br>• Will be issued and effective as of the date of the written application for conversion. |

The amount of insurance for any new policy will not be:
• Less than the minimum required for the plan selected.  (At least one plan will always be available for conversion.)
• More than the amount of that Other Insured's coverage under this rider.

Evidence of insurability satisfactory to us will be required only if the new policy is to include:
• Any rider providing additional benefits.
• An option to apply dividends to purchase one year term insurance additions.

The premium rate on any new policy will be based on:
• That Other Insured's Premium Class and Rate Class Percent, if applicable, for this rider.
• That Other Insured's attained age on the new policy date.
• Our premium rates in effect on the new policy date.

Any new policy's provisions for suicide and incontestability will have the same effective date as those provisions have in this rider.  However, if the new policy contains any new benefits provided by rider, any provisions for suicide and incontestability in such new rider will start on that rider's effective date.

| | |
|---|---|
| **Nonparticipating** | Dividends are not payable. |
| **Rider Termination** | This rider will end at the earliest of the following events:<br>• The policy terminates.<br>• Benefits terminate for all Other Insureds.<br>• The policy's extended term or reduced paid-up insurance option, if any, goes into effect.<br>• Your Written Request. |
| **Confirmation of Changes** | We will mail to your last known address confirmation of any changes to this rider's benefits, including the effective date of any change. |

*Signed for the Company.*

Fidelity and Guaranty Life Insurance Company

President

LEVEL TERM LIFE INSURANCE POLICY

Nonparticipating: dividends are not payable.

FGL NLT-U (9-98)

# EXHIBIT
# C

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA

LACRESHA CALDWELL,               )
                                 )
        Plaintiff,               )
                                 )        *3:07 CV218 - WKW*
v.                               )        Civil Action No.: CV-07-_____
                                 )        **Removed from Circuit Court of**
OLD MUTUAL FINANCIAL             )        **Tallapoosa County**
NETWORK,                         )        **CV-2007-000003**
                                 )
        Defendant.               )

### AFFIDAVIT OF CYNTHIA MASKOL

STATE OF MARYLAND          :

COUNTY OF *Anne Arundel*  :

Before me, the undersigned authority, personally came and appeared Cynthia L. Maskol, who after being first duly sworn, does hereby testify as follows:

1.      I am an Assistant Vice President and Assistant General Counsel of OM Financial Life Insurance Company ("OM Financial Life"), formerly known as Fidelity and Guaranty Life Insurance Company (a Maryland corporation), the company issuing the insurance contract which is the subject of the dispute in this matter.   OM Financial Life is a wholly-owned subsidiary of Old Mutual US Life Holdings, Inc. (a Delaware Corporation).

2.      Old Mutual Financial Network is a trade name / brand used by Old Mutual US Life Holdings, Inc. for its life insurance company holdings in the United States, including OM Financial Life.  Old Mutual Financial Network is not a legal entity.

3.      My responsibilities as Assistant Vice President and Assistant General Counsel of OM Financial Life include receiving and accepting service of process and other legal filings on behalf of the Company.   I give this Certification based upon my personal knowledge.

2.    OM Financial Life does not maintain an office at Post Office Box 81497, Lincoln, NE 68501, nor is it a usual place of business of OM Financial Life.  There are no Old Mutual employees working at that location.  The physical office and place of business at Post Office Box 81497, Lincoln, NE  68501 is that of a company called TAG.  TAG performs scanning and imaging services for OM Financial Life, scanning correspondence and documents received in connection with various claims, including, but not limited to, death claims.  TAG is not, however, a managing or general agent of OM Financial Life, nor an agent for service of process.

3.    At the time he signed for the Complaint, David P. Otte was an employee of TAG, not OM Financial Life.   David P. Otte is not and was not an employee, officer, managing agent, or general agent of OM Financial Life.

Further, Affiant sayeth not.


_____
CYNTHIA L. MASKOL

Sworn to and subscribed before me this 1st day of March , 2007.

_____
NOTARY PUBLIC

My Commission Expires: 10/5/08